IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY MILLER and ROGER PLATE, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N. A.,<br><br>Defendant. | Case No.: 2:16-cv-05597-JHS<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF PLAINTIFF ROGER PLATE** |

Defendant Wells Fargo Bank, N.A. files this brief in support of its motion for summary judgment on Plaintiff Roger Plate's claim under the Fair Labor Standards Act ("FLSA"), Plate's sole claim in this case. *See* Second Am. Compl. ("SAC"), Doc. 39, ¶¶ 63-74.

## I.  INTRODUCTION

Plaintiff Roger Plate worked for Wells Fargo as a Personal Banker from January 2011 until December 30, 2013.[1]  He and Plaintiff Miller filed this lawsuit under the FLSA on October 25, 2016, and Plate filed his opt-in consent form the next day, October 26.[2]  Applying the FLSA's maximum, three-year statute of limitations, for purposes of this motion only, Plate may

---

[1] Declaration of Nisa Craw ("Craw Decl."), attached as Ex. B to Defendant's Statement of Undisputed Facts In Support of Its Motion for Summary Judgment on the Claim of Plaintiff Roger Plate, submitted concurrently herewith ("SOF"), ¶¶5-6; Transcript of the Deposition of Roger Plate, dated May 25, 2017 ("Plate Dep.") 9:24-10:2, 30:22-31:3.  All relevant excerpts from the Plate Dep. are Ex. 1 to the Declaration of Rachel Hoffer ("Hoffer Decl."), attached as Ex. A to the SOF.

[2] Compl., Doc. No. 1; Doc. 3.

pursue his FLSA claim for the ten-week period at the end of his employment, from October 26 to December 30, 2013 (the "Relevant Period").[3]

During the Relevant Period, Plate alleges that Wells Fargo violated the FLSA by failing to pay him for all of the overtime he purportedly worked. Yet Plate admitted in his deposition that he recorded all of his work time in Wells Fargo's timekeeping system. As he testified: "Each day I input my daily start and end time into the time sheet. It was my regular practice to record all hours worked on my time sheet."[4] But, according to Plate, on three or four unspecified occasions, his own handwritten time records (which he misplaced or has since destroyed) did not match the time shown on his pay stubs. As a result, after he accurately recorded his time, Plate has concluded, someone else must have altered his time records in Wells Fargo's timekeeping system without his knowledge.

Plate does not recall when he noticed these several alleged discrepancies between his lost or discarded records and his pay stubs; he does not know how or by whom his time entries allegedly were altered; and he does not state by how much time his recorded time entries were supposedly reduced (or even whether any such reduction actually deprived him of overtime due under the FLSA).

In other words, Plate has not presented any evidence that could possibly satisfy his burden of proving that, within the Relevant Period (or, at any time), Wells Fargo did not pay him

---

[3] Under the FLSA, the statute of limitations is either two years or three years, depending on whether the plaintiff proves that the employer's violation of the statue was "willful." *See* 29 U.S.C. § 255(a). A willful violation is subject to the three year limitations period (*id.*); a violation that is not willful is subject to the two year limitations period. *Id.* For purposes of this motion only, Wells Fargo assumes that a three-year statute of limitations applies to Plate's claim. If, however, the presumptive two-year statutory period applies, Plate's claims would be entirely time barred.

[4] Declaration of Roger Plate, dated August 11, 2017 (Doc. 47-3, the "Plate Decl.") ¶ 15; *see also*, Plate Dep. 39:10-12 ("Q: Did you always record all of your hours on your time sheet? A: Yes.")

for all of his work time. To the contrary, Wells Fargo's own time records uncontrovertibly establish that he was paid for all the time that he worked, including all overtime.

## II.     PROCEDURAL BACKGROUND

Plaintiffs have amended their Complaint twice. The now-operative Second Amended Complaint includes two counts: one for alleged failure to pay overtime to Plate and Miller (SAC ¶¶ 63-74), and the other for certification of their claim as a collective action (SAC ¶¶ 75-80).

Discovery began in March of this year with the exchange of the parties' initial disclosures. On May 5, the Court held a conference on the initial plan for discovery. The Court ordered bifurcated discovery, with the first phase covering the merits of Plate's and Miller's individual FLSA claims and their collective allegations.[5]

Subsequent to the Court's order, discovery continued for another four months. During that time, the parties engaged in written discovery and exchanged documents (including Wells Fargo's production of Plate's time and pay records for the Relevant Period); Wells Fargo also took the depositions of Miller and Plate. The first phase of discovery closed on August 10, 2017.[6]

On August 11, 2017, Plate and Miller filed their Motion To Conditionally Certify a Collective Action And To Issue Notice ("Motion to Certify") (Doc. 46). Concurrently with this Motion for Summary Judgment, Wells Fargo has filed its Opposition to Plaintiffs' Motion to Certify.

---

[5] Initial Sched. Order, Doc. 34; Transcript of Telephone Conference in Chambers, dated May 5, 2017 (attached as Ex. 3 to Hoffer Decl.), 24:17-25:17 (allowing merits-based discovery to proceed as to Miller and Plate; if a collective were certified, merits discovery as to any opt-in plaintiffs would not occur until the second phase of discovery).

[6] Initial Sched. Order ¶ 1.

Based on the undisputed facts set forth below, Wells Fargo is entitled to summary judgment dismissing Plate and his FLSA claim. This would mean that Miller's FLSA claim would be all that remains of the first count of the SAC and that any collective, if this Court were to conditionally certify one, would be limited to what Miller herself would have standing to seek.

## III. FACTS[7]

### A. Plate's Employment, His Allegations, And His Admissions.

During the Relevant Period, Plate worked for Wells Fargo as a Personal Banker at the King of Prussia branch.[8] As a Personal Banker, Plate was paid on an hourly basis and was eligible to receive overtime compensation for time worked in excess of 40 hours in a workweek.[9]

Plate admitted at his deposition that, throughout his employment, he always accurately recorded his time worked.[10] In his subsequent declaration, he reiterated this point: "Each day I input my daily start and end time into the time sheet. It was my regular practice to record all hours worked on my time sheet. At the end of the work week, I electronically submitted the time sheet for approval to my manager."[11] In addition, it is undisputed that Plate was paid for all of the hours, including overtime hours, reflected on his pay stubs.[12]

---

[7] This section includes both the facts set forth in the SOF and additional factual background to provide helpful context. The facts that are included in the SOF include both the record cite and a "SOF" cross-reference.

[8] Craw Decl. ¶ 6. From January 11, 2011 through October 30, 2012, Plate worked as a Personal Banker at the Collegeville branch. *Id.*; Plate Dep. 9:18-10:5 (first branch was Collegeville); *id.* at 11:3-10 (later transferred to King of Prussia branch).

[9] *See* Craw Decl. ¶¶ 9, 11; Plate Decl., ¶ 7 (paid $21.63 per hour and was eligible for bonuses); *see* SOF, ¶ 4.

[10] Plate Dep. 39:10-12 ("Q. Did you always record all of your hours on your time sheet? A. Yes."); SOF, ¶ 23.

[11] Plate Decl. ¶ 15; SOF, ¶¶ 24-25.

[12] Plate Dep. 33:15-23 ("Q. … So, did you ever get a pay stub or a pay voucher that said your pay is going to be X dollars but that's not actually the amount you were paid? MR. FOZOUNI:

4

**Plate's handwritten notes.**  Plate claims that at some point during his employment, he noticed instances when, he believed, his pay stub showed fewer hours than what he had recorded in the timekeeping system, "Time Tracker."[13]  As a result, Plate alleges, at the end of each week, he began writing on a piece of paper or post-it note his time entries that he submitted in Time Tracker.[14]  He then compared his notes of his time entries to his pay stubs.[15]  If he did not notice any discrepancies between his notes and his pay stub, then he discarded his notes.[16]  When he thought that there were discrepancies between his notes and his pay stub, he claims that he showed his notes to his Branch Manager, Jonathan Duncan.[17]  This occurred, Plate alleges in his declaration, "[o]n approximately four occasions while I was working at the King of Prussia branch."[18]  Previously, at his deposition, Plate claimed that "three or four times" he reported discrepancies to Duncan.[19]

Whether it is three or four times, Plate either misplaced or destroyed his handwritten notes of his time entries, and he does not remember what specific discrepancies they showed.[20]

---

Objection; speculation.  BY MR. BANNON:  Q. Do you remember that ever[] happening? A. I don't recall that."); SOF, ¶ 52.

[13] Plate Dep. 39:4-9, 39:23-40:5; Plate Decl. ¶ 18; SOF, ¶ 30.

[14] Plate Dep. 38:4-24 (started at the King of Prussia branch a practice of copying down his hours at the end of the week exactly as he had recorded them in the timesheet); SOF, 26.¶

[15] Plate Dep. 34:23-35:16; SOF, ¶¶ 27-28.

[16] Plate Dep. 35:17-21 ("Q. If you review it, after you reviewed it, what do you do with the piece of paper? A. I usually discarded it unless there was some type of issue or, you know, something that I needed explained."); SOF, ¶ 29.

[17] Plate Dep. 38:18-24.

[18] Plate Decl. ¶¶ 18-19.

[19] Plate Dep. 41:23-42:3; *see* SOF, ¶ 30.

[20] Plate Dep. 35:22-36:8 (as of May 25, 2017 deposition, he had not come across any of the paper scraps or post-it notes on which he replicated exactly his Time Tracker time entries); Plate Dep. 64:6-67:7 (at his deposition, reviewing the defendant's document requests and confirming that he has no documents responsive to any of the requests).  In his supplemental responses to

In addition, other than a single discussion with Duncan in "either late November or early December" of 2013,[21] Plate does not recall when he reported any alleged discrepancy to Duncan. Also, at his deposition, Plate was unable to provide any other information about these alleged instances, such as what days' or weeks' entries were incorrect, the approximate number of hours allegedly excluded from his pay, and/or whether the excluded hours would have been overtime or non-overtime hours.[22]

**Plate's unfounded assertion that a "district manager" altered his time.** Plate also provides no evidence to support his assertion that someone altered his Time Tracker records after he recorded them. In his deposition, Plate testified that he never saw his Branch Manager change his time entries, and in fact, Plate has never claimed to see anyone change his time entries.[23] After his deposition, Plate submitted a declaration claiming that an unidentified "district manager" adjusted his time entries "after they had been reported."[24] Yet Plate cites no evidence to support this new assertion, and as shown below, Plate's Time Tracker records prove beyond question that this did not occur. Likewise, they prove uncontrovertibly that no one altered Plate's time entries, as he alleges, to deprive him of overtime pay.

---

discovery, Plate confirmed that he has no records to support his claim, other than the "United States Senate sworn testimony of Wells Fargo CEO John Stumpf on or about September 20, 2016 and/or documents related to that testimony." Plaintiff Roger Plate's Supplemental Responses and Objections to Defendant Wells Fargo Bank, N.A.'s First Requests for Production, dated Aug. 4, 2017, Response No. 2, 4-5, 14, attached as Ex. 2 to Hoffer Decl; *see* SOF, ¶ 35.

[21] Plate Dep. 42:4-9 (raised the last pay issue in "either late November or early December").

[22] Plate Dep. 40:8-18 (cannot remember when he first noticed a discrepancy or any specifics concerning the first time; all he remembers is that he approached Duncan about it); *id* at 42:13-17 (does not recall what the error was the last time he noticed a discrepancy beyond the general recollection that he believed he had been paid for less than the number of hours on his timesheet).

[23] Plate Dep. 40:24-41:13; SOF, ¶ 34.

[24] Plate Decl. ¶ 11.

### B. Wells Fargo's Timekeeping System, Time Tracker.

Time Tracker is an online timekeeping system that functions like a manual-entry timesheet.[25] Wells Fargo's employees (referred to as "Team Members") are encouraged to record or "enter" their start and stop times in Time Tracker daily, but the system allows them to enter their time at any time before it must submitted to payroll at the end of the week.[26] Plate testified that he entered his time daily.[27]

**Certifying completed time entries.** Once a Team Member has recorded all of his/her time worked for the week, Time Tracker requires employees to "complete" the weekly time entries in order for the time to be released to Wells Fargo's Payroll Department.[28] To "complete" the time entries, Team Members must certify the accuracy of their time entries by responding to a pop-up window in Time Tracker that states as follows:

> By clicking on 'Complete,' I certify that all of the information on the time sheet—hours worked or taken as time off and meal and rest period status—is accurate. … I understand that I am subject to corrective action, which may include termination of employment, if I have failed to record or have misrepresented any information on my timesheet.[29]

The Team Member must select the "OK" button in the pop-up window to complete the time entries.[30] If the Team Member's time entries are not accurate, then the Team Member must click on the "Cancel" button to dismiss the pop-up window, revise the time entries to make them accurate, and then return to the certification window to complete the entries for release to

---

[25] Declaration of Marc Shriver ("Shriver Decl."), attached as Ex. C to the SOF, ¶¶ 3, 7; Plate Dep. 27:3-28:4; Plate Decl. ¶ 14; SOF, ¶ 6.

[26] Shriver Decl. ¶ 8; Plate Dep. 28:16-18 (others entered their time by the end of the week).

[27] Plate Dep. 28:13-16 (Plate chose to enter his time daily).

[28] Shriver Decl. ¶¶ 9-10; SOF, ¶ 9.

[29] Shriver Decl. ¶ 10; Ex. 2 to Shriver Decl.

[30] Shriver Decl. ¶ 10.

payroll.[31]  Once the Team Member has completed his or her time entries, no one other than the Team Member can "uncomplete" the time entries and revise them.[32]

**Manager's ability to revise or complete time entries.**  A manager may enter time or make changes to a Team Member's time entries *before* they are completed.[33]  If a manager does so, Time Tracker notifies the Team Member that changes have been made to his or her time entries.[34]  In addition, any such revised time entries appear when the Team Member reviews and certifies the accuracy of his or her time entries in order to complete them for release to payroll.[35]  If a Team Member is absent from work on the day when time entries must be completed, a manager may also complete the time entries for the Team Member for that week.[36]

**Identifying who last revised and who completed time entries.**  Time Tracker records include a field called "Entered By" that identifies the last person to enter or revise the time entries for each workday as well as an "Entered Date" field that identifies the last time a time entry was recorded or revised.[37]  Time Tracker records also include fields called "Completed By" and "Completed Date" that identify who certified the accuracy of the time entries and completed them for release to payroll and when the time entries were completed.[38]

---

[31] Shriver Decl. ¶ 10.

[32] Shriver Decl. ¶ 11; SOF, ¶ 15.

[33] Shriver Decl. ¶ 12; SOF, ¶ 13.

[34] Shriver Decl. ¶ 12.

[35] Shriver Decl. ¶ 12.

[36] Shriver Decl. ¶ 13; SOF, ¶ 14.

[37] Shriver Decl. ¶ 14; SOF, ¶¶ 17-18.

[38] Shriver Decl. ¶ 14; SPF, ¶¶ 19-20.

Thus, if someone other than the Team Member was the last person to enter or revise a time entry, then this person would be identified in the "Entered By" field in Time Tracker.[39] Similarly, if someone other than the Team Member completed the time entries, then that person would be identified in the "Completed By" field in the Time Tracker records.[40]

### C. Plate's Time Tracker Records Refute His "Time Shaving" Theory.

**Plate entered and completed his own time entries in 8 of the 10 weeks.** The "Completed By" and "Entered By" fields and dates in Plate's Time Tracker records show that, in eight of the ten weeks within the Relevant Period, Plate was both (1) the person who entered or last revised his time entries, and (2) the person who verified the accuracy of his time entries and completed them before they were sent to payroll for processing.[41] In addition, the work time entries in Plate's Time Tracker records for these eight weeks match the number of work hours for which he was paid in each pay period.[42] As a result, for these eight weeks, Plate's Time Tracker records and his pay records establish conclusively that the premise of his claim is wrong: no one altered Plate's time entries to remove overtime, or any other work time.

**Plate did not and could not have worked overtime in the remaining 2 weeks.** In the remaining two weeks of the Relevant Period, Plate's Time Tracker records show that his Branch Manager, Jonathan Duncan, and a Service Manager who worked at the same branch with Plate, Karen Dreier, entered missing time and completed Plate's time entries for two separate weeks.[43] Both of these weeks, Plate was absent from work—once because of his father's death and once

---

[39] Shriver Decl. ¶ 15; SOF, ¶ 21.

[40] Shriver Decl. ¶ 15; SOF, ¶ 22.

[41] Shriver Decl. ¶ 17; SOF, ¶ 36.

[42] Shriver Decl. ¶ 25; *id*. Exs. 3, 5; SOF, ¶ 51.

[43] Shriver Decl. ¶¶ 18-20; *see* SOF, ¶¶ 38-50.

9

because of the separation of his employment.[44] In both of those weeks, Duncan and Dreier added time entries to Plate's time; they did not change any entries made by Plate.[45] Further, in both of those weeks, Plate did not work—and could not have worked—in excess of 40 hours.

The first of the two weeks when Plate did not complete his time was the week ending November 23, 2013.[46] In that week, Plate worked Monday and Tuesday, November 18 and 19, but then took the rest of the week off because of the death of his father.[47] Plate entered his own time (7.5 hours total) for his work on Monday.[48] Service Manager Dreier entered 8.5 hours of work time for Plate on Tuesday.[49] For Wednesday, Dreier entered 8 hours of paid time off, and for Thursday and Friday, Dreier entered in Plate's Time Tracker records 8 hours each of paid bereavement leave.[50] Dreier also completed Plate's time entries for the week, which showed that Plate had worked a total of 16 hours and had taken another 24 hours of time off.[51]

The second of the two weeks when Plate did not complete his time was the week ending January 4, 2014, the last week of Plate's employment.[52] Plate worked only one day that week: Monday, December 30, 2013,[53] and he did not enter his time for that day.[54] Because Plate was

---

[44] Shriver Decl. ¶¶ 18-20; Declaration of Karen Dreier ("Dreier Decl."), attached as Ex. D to the SOF, ¶ 16; Declaration of Jonathan Duncan ("Duncan Decl."), attached as Ex. E to the SOF, ¶ 15.

[45] Dreier Decl. ¶¶ 17-19; Duncan Decl. ¶ 15; SOF, ¶¶ 40-44, 49-50.

[46] Shriver Decl. ¶ 18.

[47] Dreier Decl. ¶ 16.

[48] Shriver Decl. ¶ 18 (Time Tracker records show Plate in "Entered By" on Monday, Nov. 18); Dreier Decl. ¶ 17; *see* SOF, ¶ 38.

[49] Shriver Decl. ¶ 18 (Time Tracker records show Dreier in "Entered By" for all days but Monday); Dreier Decl. ¶ 18; SOF, ¶ 41.

[50] Shriver Decl. ¶ 18; Dreier Decl. ¶¶ 18-19; SOF, ¶¶ 42-43..

[51] Shriver Decl. ¶ 19; Dreier Decl. ¶ 19; SOF, ¶¶ 45-46.

[52] Shriver Decl. ¶ 20; *see* SOF, ¶ 47-48.

[53] Dreier Decl. ¶ 20; Duncan Decl. ¶ 15; *see* SOF, ¶ 49.

not at work the rest of the week and did not have access to Time Tracker, Duncan entered Plate's time,[55] a total of 7.75 hours of work for Monday, December 30.[56] Dreier completed Plate's time for that week when she reviewed Plate's time entries the following Monday, January 6, 2014.[57]

As a result, in the only two weeks during the Relevant Period when someone other than Plate entered or completed his time, Plate worked only one or two days—a total of 16 hours in one week and 7.75 hours in the other.[58] He, therefore, did not work—and could not have worked—more than 40 hours either week, and he cannot state a claim for overtime under the FLSA for either week or, for that matter, for any week within the Relevant Period.

## IV. ARGUMENT

### A. Legal Standard.

Summary judgment is appropriate when, as here, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The summary-judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

To survive a motion for summary judgment, a plaintiff "'must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; [he] must introduce evidence from which a rational finder of fact could find in [his] favor.'" *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1020

---

[54] Shriver Decl. ¶ 20; Dreier Decl. ¶ 22; Duncan Decl. ¶ 15.

[55] Duncan Decl. ¶ 15.

[56] Shriver Decl. ¶ 20; Duncan Decl. ¶ 15; SOF, ¶ 49.

[57] Shriver Decl. ¶ 20; Dreier Decl. ¶ 22; SOF, ¶ 50.

[58] Shriver Decl. ¶¶ 19-20; Dreier Decl. ¶ 19; Duncan Decl. ¶ 15.

(3d Cir. 1991)). Moreover, a plaintiff cannot create a genuine issue of material fact simply by disputing or contradicting his own unambiguous admissions. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

### B.  Plate's Groundless Claim of "Time-Shaving."

Plate bears the threshold burden of proving that he performed unpaid overtime work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014); *Sniscak v. Borough of Raritan*, 86 F. App'x 486, 487 (3d Cir. 2003); *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014).

Plate cannot meet this burden with a "blanket allegation that certain amounts [are] still owed to [him]. . . ." *Sniscak*, 86 F. App'x at 487. Rather, Plate must connect his unpaid overtime claim to a "payroll record, timesheet, or other documentary evidence." *Id.*; *see also Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (affirming summary judgment for employer where the plaintiff had made only unsubstantiated assertions); *Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-CV-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007) (granting summary judgment for employer where "plaintiff has submitted no evidence beyond bare allegations and vague undocumented estimates to support his claim"). To do so, Plate must come forward with competent evidence establishing the veracity of his claims. *Harvill*, 433 F.3d at 441.

Plate's Time Tracker records undisputedly refute Plate's claim that someone, a "district manager" or anyone else, altered his time to prevent him from receiving overtime pay. Those records establish that during the Relevant Period no one changed Plate's time entries in Time Tracker.

They also establish that Plate, himself, completed his time entries, certified their accuracy, and submitted them to payroll in eight of the ten weeks during the Relevant Period.

Plate was the last person to do anything to his time entries before they were sent to payroll and payment was issued. Further, once Plate completed his time entries, no one else could "uncomplete" and edit them. Plate, therefore, cannot show that someone else altered his time entries in these eight weeks after he certified that they were correct and completed them for processing by the Payroll Department. Plate has not attempted to produce, and cannot produce, any evidence to the contrary.

During the other two weeks in the Relevant Period, Plate's time records were completed by his Branch Manager or a Service Manager. In both weeks, Plate's managers completed his time for him because he was not at work and was unable to do so. The managers did not change any of Plate's time entries; they only added time entries. Regardless, Plate did not work and could not have worked overtime in either of these weeks. He, therefore, cannot state a claim for unpaid overtime, his sole claim in this lawsuit.

Courts have not hesitated to reject allegations similar to Plate's by plaintiffs who were unable to provide any evidentiary support for their claims. For example, in *DiSantis v. Morgan Props. Payroll Servs., Inc.*, No. 09-6153, 2010 WL 3606267 (E.D. Pa. Sept. 16, 2010), the plaintiff asserted that her employer's timekeeping records were inaccurate but did not "direct the Court to any specific problems with the time-keeping records." *Id.* at *13. Thus, the court found that the plaintiff "has not convinced the Court that the Defendants' records are incomplete or inaccurate." *Id.* The court reasoned, even if the timekeeping records were inadequate or inaccurate in some way, the employer was entitled to summary judgment because the plaintiff had provided no more than "vague, conclusory, and speculative testimony to support her claim" of unpaid overtime. *Id.* at *13. As a result, the Court found that the plaintiff provided

insufficient evidence to establish a factual foundation for even an estimate or approximation of the amount of unpaid time. *Id.* at *13-14.

As another example, in *Daniels v. Finish Line, Inc.*, No. 2:07-cv-1501-GEB, 2008 WL 4814008 (E.D. Cal. Oct. 31, 2008), the plaintiff alleged that his managers improperly removed hours from his timecard and forced him to work "off the clock" at times that he was not scheduled to work. *Id.* at *1. The plaintiff testified that he told his store manager about his unpaid time but did not specify what "payment concerns" he had raised with the manager. *Id.* The plaintiff also recalled working ten or more shifts without any pay but could not identify the dates or times of those shifts. *Id.* at *2. He supposedly kept a personal record of his actual work times but admitted that he had since thrown it away. *Id.* at *2. Finally, the plaintiff submitted emails from corporate employees that established that off-the-clock work had been a problem at some other stores in the past, although not clearly at the plaintiff's store. *Id.* The court concluded that none of the evidence the plaintiff had submitted was sufficient to draw a reasonable inference that the off-the-clock work problems at some other stores had also affected the plaintiff's store. *Id.* at *3. In addition, the plaintiff had "submitted no evidence beyond bare allegations and vague undocumented estimates to support his claim" that he personally was forced to work off the clock or was provided inadequate compensation. *Id.* (citations omitted). Therefore, the plaintiff's claim could not survive summary judgment.

The same result is warranted here. Given the undisputed facts above, Plate has no basis to claim that he worked any overtime for which he has not received proper pay. *See Perez v. Pinon Mgmt., Inc.*, No. 12-CV-00653-RM-MEH, 2014 WL 5596261, at *8 (D. Colo. Nov. 4, 2014) (holding that plaintiff failed to show that she worked more than 40 hours in a workweek without compensation, where plaintiff identified two instances in which her payroll records

allegedly were inaccurate, but even including her alleged off-the-clock work, her hours worked during those workweeks did not exceed 40 hours); *Sniscak*, 86 F. App'x at 487 (affirming summary judgment for employer where the employer "submitted voluminous payroll records seeking to show that Plaintiffs were properly compensated, [and] Plaintiffs' blanket allegation that certain amounts were still owed to them was never connected to a single payroll record, timesheet, or other documentary evidence"); *see also Rosano v. Twp. of Teaneck*, 754 F.3d 177, 189 (3d Cir. 2014) (affirming grant of summary judgment for employer where the plaintiffs were unable to provide any documentation that could be used to support their overtime estimates and refute the hours set forth in the employer's records).

      **C.**      **Plate's Baseless Estimate of His Hours Worked Contradicts His *Own* Testimony That He Recorded All Time Worked.**

As shown above, Plate's assertion that he was not paid for all overtime hours worked is based on factual allegations that are unsupported and demonstrably wrong. Plate admits that he accurately recorded all of his hours worked in Wells Fargo's timekeeping system.[59] Moreover, even according to Plate, his paystubs were accurate throughout his employment, with the exception of "three or four" unspecified occasions.[60]

Yet Plate worked for Wells Fargo for three years, from January 2011 through December 30, 2013. Plate's Time Tracker records reveal that during the Relevant Period (excluding his last week in which he worked only one day and any weeks in which he did not work at all), Plate worked an average of 35.16 hours per week, and the greatest amount of time he worked in any of

---

[59] Plate Decl. ¶ 15; *see also,* Plate Dep. 39:10-12 ("Q: Did you always record all of your hours on your time sheet? A: Yes."); SOF, ¶ 23.

[60] Plate Decl. ¶ 18; Plate Dep. 41:23-42:3; SOF, ¶ 30. Plate testified that there was a single "issue" with is pay at his first branch (the Collegeville branch); however, he also testified that this one error was "rectified." Plate Dep. 42:18-43:2.

15

these weeks was 42.16 hours.[61] Looking at the entirety of his employment, Plate worked, on average, 40.41 hours per week, and during his employment at the King of Prussia branch (from October 28, 2013 through December 28, 2013), Plate worked, on average, 40.03 hours per week (excluding the final week of Plate's employment when he worked only one day, and any weeks in which he did not work at all).[62]

Hence, according to three years' worth of records that Plate agrees are accurate, with the possibility of "three or four" unspecified exceptions, Plate consistently worked on average fewer than 41 hours per week. Despite these undisputable facts, Plate inexplicably testified on examination by his counsel at the end of his deposition and again in his post-deposition declaration, that he worked on average 50 to 55 hours per week.[63] But Plate does nothing to support this estimate, and in light of the conclusive evidence discussed above, this estimate is clearly erroneous.

Under settled law, Plate cannot satisfy his burden of proving that he performed unpaid overtime work by making a "blanket allegation that certain amounts [are] still owed to [him]. . . ." *Sniscak*, 86 F. App'x at 487. Rather, Plate must connect his unpaid overtime claim to a "payroll record, timesheet, or other documentary evidence." *Sniscak*, 86 F. App'x at 487; *see also Harvill*, 433 F.3d at 441 (affirming summary judgment for employer where the plaintiff had made only unsubstantiated assertions); *Millington*, 2007 WL 2908817, at *7 (granting summary judgment for employer where "plaintiff has submitted no evidence beyond bare allegations and vague undocumented estimates to support his claim").

---

[61] Shriver Decl. ¶ 24; *id.* Ex. 4.

[62] Shriver Decl. ¶ 24; *id.* Ex. 4.

[63] Plate Dep. 74:18-21; Plate Decl. ¶ 8.

Plate makes no effort to tie his obviously contrived 50 to 55 hours allegation to his time and pay records; nor does he say how many of the 50 to 55 hours per week, if any, he worked *without* pay. He also does not allow for variation in this hours worked estimate for weeks in which he took time off. The only additional testimony he provides on this subject consists of vague statements about an unspecified amount of extra work to hit sales goals.[64] This clearly falls short of his burden of establishing the necessary factual foundation for his claim.

Plate's Time Tracker records—and his acknowledgement that they are accurate (with the exception of the three or four unspecified discrepancies discussed above)—conclusively undermine his disingenuous claim that he regularly worked 50 to 55 hours per week. *See e.g.*, *Harris v. Healthcare Servs. Grp., Inc.*, No. 06-2903, 2008 WL 2789534, at *5 (E.D. Pa. Jul. 18, 2008) (granting employer's motion for summary judgment where plaintiffs failed to provide sufficient information regarding the amount of their alleged uncompensated work); *Rosano*, 754 F.3d at 189 ("An estimation ... which fails to set forth the proper method of calculation and does not account for day-to-day differences in [plaintiffs'] scheduling, hardly provides a foundation for an inquiring court to 'reasonably infer[]' FLSA violations or the amount of an award") (citation omitted); *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059–60 (8th Cir. 2014) (affirming summary judgment for employer where plaintiff claimed to work 45 to 70 hours per week but "failed to specifically account for the hours worked," "failed to provide a meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his employment," and "failed to take into account any paid holidays [or] any paid vacation").

---

[64] Plate Dep. 74:22-75:20 (when asked what caused him to work that many hours per week, Plate said that "in some cases" on a weekly basis, his manager asked him to work "a little bit later" than his scheduled end time to try to hit goals or objectives); Plate Decl. ¶ 8 (arrived 15 minutes before branch opening and stayed an unspecified amount of time after branch close, especially for Wednesday call nights, and sometimes worked Saturdays to meet sales goals).

## V. CONCLUSION

For all these reasons, Wells Fargo respectfully asks the Court to grant summary judgment in its favor, dismissing Plate and his FLSA claim from this lawsuit with prejudice.

DATED: October 2, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

*s/ Louisa J. Johnson*
Richard L. Alfred, *pro hac vice*
Cynthia L. Westervelt, *pro hac vice*
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800

Timothy M. Watson, *pro hac vice*
Rachel M. Hoffer, *pro hac vice*
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002-2812
(713) 225-2300

Louisa J. Johnson, *pro hac vice*
SEYFARTH SHAW LLP
1075 Peachtree Street N.E., Suite 2500
Atlanta, Georgia 30309-3958
(404) 885-1500

Jacob Oslick (Pa. Bar No. 311028)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
WELLS FARGO BANK, N.A.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2017, a copy of the foregoing **Defendant's Brief in Support of Its Motion for Summary Judgment on the Claim of Plaintiff Roger Plate** was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

*s/ Louisa J. Johnson*
One of the Attorneys for Defendant
