IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY MILLER and ROGER PLATE, on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>WELLS FARGO BANK, N. A.,<br><br>     Defendant. | Case No. 2:16-cv-05597-JHS<br><br>**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION** |

Richard L. Alfred, *pro hac vice*
Cynthia L. Westervelt, *pro hac vice*
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210-2028
(617) 946-4800

Louisa J. Johnson, *pro hac vice*
SEYFARTH SHAW LLP
1075 Peachtree Street N.E., Suite 2500
Atlanta, Georgia 30309-3958
(404) 885-1500

Timothy M. Watson, *pro hac vice*
Rachel M. Hoffer, *pro hac vice*
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002-2812
(713) 225-2300

Jacob Oslick (Pa. Bar No. 311028)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
Attorneys for Defendant
WELLS FARGO BANK, N.A.

Defendant Wells Fargo Bank, N.A. submits this supplemental memorandum to address questions raised by the Court and arguments made by Plaintiffs at the December 21, 2017 hearing on the following two pending motions, respectively: (i) Wells Fargo's Motion for Summary Judgment on the Claim of Roger Plate (Doc. 51), and (ii) Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice (Doc. 46).

I. SUPPLEMENT TO WELLS FARGO'S SUMMARY JUDGMENT MOTION

 A. Plate's Effort To Fabricate A New Post-Discovery Theory Of Liability Does Not Save His FLSA Overtime Claim From Summary Judgment.

Plate testified at his deposition that he always accurately recorded his work time in the timekeeping system and that the reason he believes he was not paid for all of his overtime is that someone somehow must have shaved off some of that time after he entered it.[1]

At the hearing, in an effort to morph Plate's claim beyond its unsupportable time-shaving bounds into a more general timesheet falsification claim, Plaintiffs' counsel made two relevant misstatements. First, they claimed that Plate has testified "extensively" and "repeatedly and in numerous different ways" that he falsified his own time entries, purportedly at a manager's direction. Tr. 12:11-13, 45:4-7. Yet, Plate has testified only twice—first at deposition and second in a declaration—regarding the accuracy of his time entries. The sole place where he asserts that he falsified his own time is in a couple of sentences in his post-deposition declaration that are inconsistent with other parts of that same declaration and, more significantly, contradict his deposition testimony. Second, Plaintiffs' counsel disingenuously argued that Plate's declaration claim of personal timesheet falsification was a mere "clarification" of his prior testimony. It is not; it is a sham. *Id.* 45:21-46:9.

---

[1] *See* Wells Fargo's Motion for Summary Judgment for complete discussion and record cites. Mem. in Supp. of Def.'s Mot., Doc. 53, at 4-6. Wells Fargo refers to this as Plate's "time-shaving claim."

1

### 1. Plate's Single Suggestion That He Falsified His Own Time Appears In His Internally-Inconsistent, Post-Deposition Sham Declaration.

Try as they might to twist Plate's deposition testimony after the fact, Plate did not testify at any point during his May 25, 2017 deposition that he had ever falsified his own time entries or been instructed by a manager to do so, and his unequivocal admission of "always" accurately recording his time was no mere passing statement. Plate Dep. (Ex. 1 to Hoffer Decl., Doc. 52-1) 39:10-12. Leading up to this clear admission, Plate explained, from pages 34 to 36 of his deposition, (i) his long-term "habit" of keeping personal notes of the time entries he had made in the timekeeping system in order to compare them to his pay stubs when he was paid for that work time, and (ii) his practice of discarding his personal notes after he confirmed that he had been properly paid. *Id.* 34:3-36:21. Then, on page 37, he testified that in creating personal notes of his time entries to compare to the pay he received, he would "write down the hours exactly what I worked." Plate Dep. (Ex. 1 to Johnson Decl., Doc. 70-1) 37:19-24. Next, on page 38, he confirmed that his accurate personal notes matched what he entered in the timekeeping system as a Wells Fargo employee at the King of Prussia branch[2]:

> Q. And did you copy it from your time sheet?
> A. Yes.
> Q. Was it [Plate's personal notes] always the same as the time sheet?
> A. Yes.
> Q. You never added any other hours onto it [Plate's personal notes] beyond what was on the time sheet?
> A. No, no.

*Id.* 38:1-21. Finally, on page 39, Plate made the clear admission that he has never falsified or under-reported his hours in recording his time in Wells Fargo's timekeeping system:

> Q. Did you <u>always</u> record all of your hours on your time sheet?
> A. Yes.

---

[2] King of Prussia is the only branch where Plate worked during the 10-week period at issue. Def. SOF, Doc. 52, ¶ 4; Pls.' Resp. to SOF, Doc. 64, ¶ 4.

*Id.* 39:10-12 (emphasis added).  Plate subsequently confirmed his deposition testimony almost a month later, on June 21, 2017, when he signed an errata sheet for his deposition transcript with the statement, "No Changes. R.P. [Roger Plate]" at the top.  Plate Dep., Doc. 52-1, 79:1-24.

The parties thereafter engaged in the following flurry of activity:

- On August 11, 2017—the day <u>after</u> discovery closed and the deadline for Plaintiffs' Motion for Conditional Certification—Plate signed and filed a declaration.  That declaration includes the following admission that buttresses his deposition testimony:

    "It was my regular practice to record all hours worked on my time sheet."

    Plate Decl., Doc. 47-3, ¶ 15.  The declaration also tells the same story Plate told in his deposition about keeping personal notes to compare to his pay stubs and purportedly noticing discrepancies between the two.  *Id.* ¶¶ 17-20.  However, inexplicably and contrary to this testimony and his prior deposition testimony, Plate also includes in his declaration a contrary claim that he was directed to record only 40 hours and sometimes followed that instruction.  *Id.* ¶¶ 11-12.

- On August 11, 2017, Plaintiffs also filed their Motion for Conditional Certification in which they did <u>not</u> argue that Plate falsified his own timesheets.  Rather, Plaintiffs continued to describe his claim solely as a time-shaving one.  *See* Pls.' Mot., Doc. 47, at 3 ("Plate noticed that he was not being paid for all hours worked based on his personal tracking of his hours worked and the reporting he had done with respect to same.").

- On October 2, 2017, Wells Fargo moved for summary judgment on Plate's claim and filed its opposition to Plaintiffs' Motion for Conditional Certification.  In both filings, Wells Fargo, like Plaintiffs, described Plate's claim as limited to a time-shaving claim.

- On October 23, 2017, Plaintiffs, <u>for the first time</u> and contrary to Plate's deposition and declaration testimony quoted above, argued in their Reply in support of their conditional certification motion that Plate asserts a timesheet falsification claim as well.

In sum, Plate's post-deposition and internally-inconsistent declaration assertion—that he falsified his own time entries—contradicts his earlier testimony, was not argued until Plaintiffs' Reply in support of conditional certification, and should be stricken or disregarded as a sham.

### 2. Plate's Sham Declaration Assertion Of Timesheet Falsification Is Not A Mere Clarification Of His Prior Deposition Testimony.

In mistakenly arguing that Plate's declaration assertion of personal timesheet falsification is a mere "clarification" of his prior deposition testimony, Plaintiffs' counsel rely on the

3

following rebuttal testimony that Plate gave in response to his counsel's contrived questions at the end of his deposition:

> Q. Mr. Plate, how many hours would you say that you would work per week when you were at Wells Fargo?
> A. I would say 50 to 55 hours a week.
> Q. And what would cause you to work that many hours per week?
> A. They have -- you know, there was a need.  The branch manager would let us know sometimes the day of that we needed to stay, you know, a little bit later <u>that day</u> to try to hit certain goals or hit certain objectives.
> Q. So, when the branch manager would tell you this, this would be in addition to what was your original schedule?
> A. Yes.  So, if you were scheduled until 5 o'clock or 5:30, early on in <u>that day</u> they may state, look, we need you to stay a little bit later to make some additional calls or whatever it may be, you know, and we would be informed that way.
> Q. Was this something that just happened on weekdays or were weekends involved as well?
> A. <u>In some cases</u> weekends were involved, also.
> Q. And how regularly did this occur?
> A. I would say <u>in some cases</u> it was a weekly occurrence.
> Q. Did you feel like you could say no to <u>staying</u> later?
> A. No, I don't think I did.

Plate Dep., Doc. 52-1, 74:18-75:23 (emphases added).  Tellingly, nowhere in this rebuttal testimony did Plate assert (i) that he failed to record accurately any of his work time on the days here and there when he stayed "a little bit later" than his scheduled 40 hours; (ii) that he worked 50 to 55 hours each week, or in any particular week; or (iii) that he worked 50 to 55 hours in any of the 10 weeks at issue.[3]  Most charitably read, this rebuttal testimony alleges only that he worked 50 to 55 hours in a week "in some [unspecified] cases," and that he did not think he could say no to staying late to work those extra hours.

---

[3] As discussed at the hearing and in Wells Fargo's Summary Judgment Motion, if a two-year statute of limitations applies to Plate's claims, his claims are completely time barred.  If he were to carry his burden of showing that a three-year statute of limitations should apply to his claim, then only the last 10 weeks of his employment would fall within the relevant time period.  Tr. 22:7-23, 24:14-20; Doc. 53 at 2 n.3.

Plate's Time Tracker records establish the lack of any inconsistency between this rebuttal testimony and Plate's prior, unequivocal testimony that he accurately recorded all of his work time. Specifically, while Plate did not, in fact, work 50 or more hours in any of the 10 weeks at issue, his Time Tracker records show that he recorded working, and was paid for, 50 or more hours in four weeks preceding the 10-week period at issue and recorded, and was paid for, overtime in a total of 93 of 150 workweeks during his entire employment.[4] Thus, Plate's rebuttal deposition testimony of working 50 to 55 hours in some unspecified weeks does not expand his time-shaving claim into a timesheet falsification claim, does not create a material factual dispute over whether he accurately recorded and was paid for all work time in the 10-week period at issue, and does not render Plate's post-deposition declaration anything other than a sham.

### 3. Plate's Sham Timesheet Falsification Claim And His Speculation Of Time Shaving Do Not Create Credibility Issues Or Material Disputed Facts.

Plate's one assertion of timesheet falsification in his internally-inconsistent, post-deposition declaration does not present this Court with a "credibility determination[]," as Plaintiffs argued at the hearing, that is "up for a jury to decide." Tr. 46:11-13. Rather, Plate's declaration fits squarely within the definition of a sham declaration—it directly contradicts his prior deposition testimony and much of his subsequent declaration, and it is not salvaged by any record evidence. As such, this Court would not be engaging in a credibility determination in disregarding it.[5]

---

[4] *See* Plate's Time Tracker Records, Ex. 4 to Declaration of Marc Shriver, Doc. 52-3 at 56-144; Def.'s Resp. to Pls.' S. Add'l Facts, Doc. 70, ¶ 56 & n.14 (listing the 93 weeks with overtime, including the following four weeks with more than 10 overtime hours: 11.00 OVT hours week ending 4/9/11, 18.25 OVT hours week ending 4/16/11, 11.25 OVT hours week ending 7/23/11, and 10.75 OVT hours week ending 1/14/12).

[5] *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (explaining that disregarding a sham affidavit is not a credibility determination and that "it is proper for the trial judge to conclude that no reasonable jury could accord [the] affidavit evidentiary weight" when faced with "a contradictory

Aside from his sham declaration and his misrepresentation of his rebuttal deposition testimony, Plate's only argument for disputing Wells Fargo's statement of undisputed facts is his unsubstantiated speculation that somehow his pay must have been shorted once during the 10-week period at issue because personal notes that he allegedly created of his time entries (but has since destroyed) did not match the hours shown on his paycheck one time near the end of his employment.  The record, however, is devoid of any evidence to substantiate this speculation (and, in fact, the record evidence clearly undermines it), which renders it insufficient to defeat summary judgment in the Third Circuit.[6]

Because Plate's efforts to fabricate a dispute over Wells Fargo's statement of undisputed facts fail and because the undisputed facts are supported by Plate's own unequivocal deposition testimony, his unrefuted Time Tracker records, and Marc Shriver's declaration testimony explaining what the Time Tracker records and Plate's pay records show, the following are the undisputed, material facts:  (1) Plate recorded all of his work time accurately; (2) no one but Plate touched his time entries in 8 of the 10 weeks at issue; (3) in the remaining two weeks, the only changes made by managers to Plate's time records were to <u>add</u> time; (4) Plate did not, in any event, work enough days in those two weeks for overtime to have been possible; and (5) Plate was paid for all work time during the 10 weeks at issue.

### B.    No Additional Discovery Is Needed Before Granting Wells Fargo's Motion For Summary Judgment.

In an effort to avoid the legal conclusion that follows from the undisputed facts, Plaintiffs' counsel raised a new argument at the hearing:  that a ruling on Wells Fargo's Summary Judgment Motion would be premature because there has not been enough discovery

---

affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment").

[6] *See* discussion of cases cited in Wells Fargo's Motion and Reply.  Doc. 53 at 12-15; Doc. 69 at 8.

yet and Plaintiffs "are information poor." Tr. 46:18-19. This argument fails for three reasons.

First, Plaintiffs are not information poor. The parties' first phase of discovery included discovery on the merits of Plate's and Miller's individual claims. Having had the benefit of months of discovery already, Plate chose to respond substantively to Wells Fargo's motion.

Second, if Plate truly believed that he needed to re-open discovery on his individual FLSA claim, he should have submitted an affidavit specifying the "reasons[] [he could not] present facts essential to justify [his] opposition" to the motion, rather than opposing it. Fed. R. Civ. P. 56(d). His failure to comply with Rule 56(d)'s requirement of presenting such an affidavit dooms his oral argument for unspecified additional discovery.[7]

Third, even counsel's suggestion at oral argument to re-open discovery on the merits of Plate's individual claim failed to specify what discovery would be needed and why it would be necessary when he has already opposed Wells Fargo's motion. Thus, Plate's counsel's oral argument also fails to meet the substantive requirements of Rule 56(d).[8]

In sum, Plate's brand new argument at the hearing for further, unspecified discovery for unidentified reasons is both procedurally and substantively deficient and, in fairness to Wells Fargo, Plate should not be afforded a second bite now at opposing summary judgment.

### C. Dismissal Of Plate Should Not Be Delayed Based On Plaintiffs' Unsubstantiated Hope That A Substitute Plaintiff May One Day Be Found.

More than a year into this lawsuit, not a single person included in the inconsistently-defined alleged collective has sought to join the case as an opt-in plaintiff, and there has been no

---

[7] *Fenter v. Mondelez Glob., LLC,* 574 F. App'x 213, 219 (3d Cir. 2014) ("If a party opposing summary judgment 'believes that s/he needs additional time for discovery, Rule 56(d) specifies the procedure to be followed.'") (quoting *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012)).

[8] *Fenter*, 574 F. App'x at 219 (explaining that the affidavit seeking more discovery must specify "'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained'") (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988)).

showing of interest by any Wells Fargo employee. Yet, Plaintiffs' final argument at the hearing was that the Court should defer ruling because "it could be that substitution may be required, but this is not the current time for it." Tr. 46:20-25.

Putting aside the practical problem that there is no one to substitute, the Supreme Court has made clear that judgment against a named plaintiff should not be delayed because of the possibility of a collective being certified.[9] Moreover, the Third Circuit's affirmance of summary judgment for the defendant in an FLSA lawsuit, when a motion for conditional certification had been pending at the time of the district court's judgment, demonstrates that the Third Circuit would not find delay to be the required, or even appropriate, course of action.[10]

In conclusion, the Court should grant summary judgment on Plate's claim now and dismiss him from this lawsuit with prejudice. It also should proceed with respect to Plaintiff Miller's FLSA claim solely on an individual basis for the reasons discussed below.

## II. SUPPLEMENT TO WELLS FARGO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

### A. This Court Can, And Should, Consider Wells Fargo's Declarations.

Wells Fargo has submitted declarations from 16 Service Manager 1s ("SM1s") and Personal Bankers ("PBs") whose testimony shows that they are dissimilar from Plaintiffs in terms of their job duties, overtime work, and receipt of proper pay for all work time.[11]

At the hearing, Plaintiffs' counsel argued that these declarations, which are fatal to Plaintiffs' collective allegations, should be disregarded as "happy camper declarations." Tr.

---

[9] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013) ("[T]he mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied.").

[10] *See Smith v. Johnson & Johnson*, No. 06-4787 (JLL), 2008 WL 5427802 (D.N.J. Dec. 30, 2008) (granting employer summary judgment on the plaintiff's individual FLSA claim and denying as moot the plaintiff's pending motion for conditional certification), *summ. j. affirmed by* 593 F.3d 280, 283 (3d Cir. 2010) (noting in procedural history district court's denial of certification motion as moot).

[11] These differences are covered in detail in Wells Fargo's Opposition. Doc. 50 at 9, 12-17.

17:13-19. Courts in the Third Circuit, however, routinely consider the defendant's evidence, particularly in cases like this one where discovery on the collective allegations has already occurred or the plaintiffs' evidence is scant, at best.[12]

During the hearing, Plaintiffs' counsel also argued that courts have disregarded declarations in opposition to motions for conditional certification in two Wells Fargo cases: *Navarro v. Wells Fargo Home Mortgage* (N.D. Cal.) and *In re: Wells Fargo Wage & Hour Employment Practices Litigation* (S.D. Tex.). Tr. 17:21-18:7. This is untrue. First, the only case captioned *Navarro v. Wells Fargo Home Mortgage* was originally filed in Superior Court in California (San Mateo County) on January 23, 2013. Wells Fargo filed a Notice of Removal on February 22, 2013 (N.D. Cal., No. 3:13-cv-00824-JSW), but on March 19, 2013, before any activity in the case, the plaintiff voluntarily dismissed his claims without prejudice.

Perhaps, counsel meant at the hearing to reference *Mevorah v. Wells Fargo Home Mortgage, Inc.*, Civ. No. C 05-1175 MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005), which Plaintiffs cite in their Reply. In *Mevorah*, the court considered the propriety of pre-certification communications with members of a Rule 23 putative class. *Id.* at *1. The case did not involve a motion for collective (or even class) certification, much less reject consideration of any declarations submitted by the defendant.

In *In re Wells Fargo Wage & Hour Emp't Practices Litig.*, Civ. No. H-11-2266, 2012 WL 3308880 (S.D. Tex. Aug. 10, 2012), both sides moved to strike the other's declarations in whole or in part. The court agreed with the defendant that those portions of the plaintiffs'

---

[12] *See* Def.'s Opp., Doc. 50, at 19 (citing four such cases); *see also Holesapple v. E-Mortgage Mgmt., LLC*, Civ. No. 11-0769 (NLH) (KMW), 2011 WL 6887684, at *5 (D.N.J. Dec. 29, 2011) (denying conditional certification after reviewing defendant's 14 declarations "submitted ... to rebut the original declarations of the plaintiffs"); *Evancho v. Sanofi-Aventis U.S. Inc.*, Civ. No. 07-2266 (MLC), 2007 WL 4546100, at *4 (D.N.J. Dec. 19, 2007) (denying certification after finding the defendants' declarations showed that the job duties described by the plaintiffs were "not accurate for other[s]" in the position).

9

declarations that were made about the job duties and pay of all others should be stricken as the plaintiffs had not established personal knowledge. *Id*. at *5, *15. With respect to the 34 declarations submitted by Wells Fargo from home mortgage consultants and loan officers or originators, the court was concerned with the fact that the plaintiffs were not <u>permitted</u> to depose any of the declarants. *Id*. at *18. For this reason, the court decided not to give them much weight but did not strike them. Unlike in that case, in the present case Wells Fargo produced the declarations within the discovery period (as evidenced by the Bates numbers on them, *see* Doc. 50-6) and with sufficient time for Plaintiffs to seek to depose them had they chosen to do so.

While the cases cited by Plaintiffs are not the only FLSA overtime lawsuits that Wells Fargo has faced, no court has <u>ever</u> granted conditional certification against Wells Fargo in an FLSA off-the-clock case involving the positions at issue here. To the contrary, in all of those cases, the court has denied plaintiffs' motion for conditional certification.[13]

The same result is warranted in this case because, despite Plaintiffs' best efforts to deny it, the 16 declarations actually show substantial dissimilarities between the declarants and the Plaintiffs, and even among the declarants.[14]

---

[13] *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *3 (S.D. Tex. Feb. 2, 2012) (denying motion to certify a collective of Personal Bankers because "Plaintiffs have not identified any company-wide, national policy or plan of denying overtime pay"); *see also Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347 SI, 2008 WL 495705, at *2 (N.D. Cal. Feb. 20, 2008) (denying conditional certification of a collective of credit managers, assistant managers, and loan processors because Wells Fargo's official policy is to pay overtime to non-exempt employees, and "plaintiffs allege that they have been denied overtime pay for 'off the clock' hours worked under a variety of different circumstances").

[14] Plaintiffs' counsel posited at the hearing that Wells Fargo's declarations "corroborate" their argument that there is "significant overlap in the job duties of" SM1s, Tellers, and PBs. Tr. 13:10-13. The only examples Plaintiffs offered to support this argument fail to do so. First, the SM1 declarant who has visited customers a few times with a PB did so for the sole purpose of introducing the customer to a PB and has testified that such visits are outside of her normal duties. Brown Decl. ¶ 18, Doc. 50-6 at 15. Second, SM1 declarants who covered a teller window briefly for a Teller to take a break did not testify, as Miller has, that they spent large amounts of time on a teller window or regularly incurred overtime for this reason, as Miller alleges. *See* Def.'s Opp., Doc. 50, at 13. Third, no PB has testified to performing Teller duties; some PBs have testified merely that they perform a duty that Tellers cannot: approving

B. **Even Without Considering The SM1 and PB Declarations, Plaintiffs Have Not Met, And Cannot Meet, The Modest Factual Showing Standard.**

Wholly apart from the 16 declarations and considering only Plaintiffs' testimony and that of their managers, Plaintiffs fail to meet even their relatively modest burden of demonstrating that they are similarly situated to each other or to the SM1s, Tellers, and PBs they seek to include in their alleged collective.[15]

Because their depositions demonstrate dissimilarities that undermine certification, Miller and Plate signed and filed post-deposition declarations in an effort to fabricate similarities that do not exist and ask this Court to look at nothing but those declarations in ruling on their certification motion. The sham nature of Plate's declaration and the reasons it should not be considered in light of his deposition testimony have been discussed above.

Miller's declaration is also a sham. She testified at her deposition that she "managed [her Tellers'] schedules" "so that [they] would not go over their 40" scheduled hours for the week, and she admitted that she would not have incurred overtime as an SM1 if she had stuck to the duties expected of SM1s.[16] After providing this deposition testimony, Miller draws the contradictory conclusion in her declaration that "hourly employees were often required to work over forty hours a week." Miller Decl. ¶ 14. The contradictory nature of such a post-deposition assertion in her self-serving declaration renders it a sham like Plate's.

C. **Beyond Being Shams, Plaintiffs' Declaration Assertions About Others Are Not Based On Personal Knowledge.**

Plaintiffs' counsel acknowledged at the hearing that conditional certification turns on "the personal knowledge of declarants," Tr. 11:9-10, and attempted to shoehorn Miller's and

---

large customer transactions so that Tellers can process them. Blando Decl. ¶ 11, Doc. 50-6 at 4; Hansen Decl. ¶ 16, Doc. 50-6 at 34-35.

[15] *See* Def.'s Opp. at 12-17.

[16] Miller Dep. (Ex. 1 to Westervelt Decl., Doc. 50-8) 44:9-20 (prevented overtime work by the Tellers at her branch); *id.* 86:18-87:22 (her non-teller work alone did not take more than 40 hours per week).

Plate's declarations into this personal knowledge requirement. *Id.* 9:18-22. However, the statements in their declarations about other SM1s, Tellers, and PBs are not based on personal knowledge but rather on hearsay and speculation. *See* Def.'s Opp., Doc. 50, at 22-24.

Plaintiffs' own Reply acknowledges the hearsay on which their claims of off-the-clock work by others are based by arguing for the consideration of such hearsay and citing cases taking this minority position. Doc. 60 at 2. The Reply also admits the speculative nature of their claims about others in arguing as follows: "Consequently, this is a sufficiently particular geographic designation which is consistent with the evidence before the Court from the two named Plaintiffs regarding the suspected extent of the pay practice at issue." *Id.* at 6 (emphasis added).

Hearsay and speculation are insufficient to satisfy even the modest factual showing required for conditional certification, the standard for which the Third Circuit has made clear requires evidentiary support.[17]

### D. After Months Of Discovery On Their Collective Allegations, Plaintiffs Are Unable To Identify A Collective Of Ascertainable Scope.

The Court inquired at the hearing about the contours of the putative collective Plaintiffs seek in terms of job positions, geographic scope, and total size. Plaintiffs' responses show that they are unclear about the scope of the collective for which they seek conditional certification.

First, they informed the Court that, in using the phrase "all hourly paid banking employees," they mean Tellers, Lead Tellers, PBs, and SM1s because they do not know of any other hourly-paid positions in the bank. Tr. 14:2-17. As defense counsel clarified at the hearing, there are in fact more hourly-paid positions in the branches than the four named by Plaintiffs, *id.* 37:14-18, which renders all the more suspect the sweeping conclusions in Plaintiffs' declarations

---

[17] *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds by* 569 U.S. 66 (2013); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012); *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

about "hourly employees," "hourly paid retail banking employees," and "other employees." Miller Decl., Doc. 47-2, ¶¶ 14, 16, 28; Plate Decl., Doc. 47-3, ¶¶ 13, 21.

Second, and despite the benefit of an entire first phase of discovery on their collective allegations, Plaintiffs could not articulate for the Court the geographic scope of the collective they seek. Instead, Plaintiffs' counsel speculated at the hearing that Wells Fargo would somehow be able to guess the scope: "I believe with an order to conditionally certify a collective action, defendant would be able to provide us with a list of the exact branches that are within that region." Tr. 15:2-5. As defense counsel explained at the hearing, Wells Fargo does not have a region that is called the "Philadelphia Community Banking Region" or an area called the "Greater Philadelphia area," and Wells Fargo has both "regions" and "areas," which are territories of different sizes and scopes. *Id.* 36:9-37:5. Thus, Plaintiffs' interchangeable use of the terms "region" and "area" does not allow even an educated guess as to the geographic scope Plaintiffs seek, and Wells Fargo should not be put to such an unreasonable burden.

Third, when pressed by the Court to provide at least an idea of the number of people who would be covered by the collective Plaintiffs seek, Plaintiffs' counsel admitted he could do no more than speculate about the size within a large range: "I think that, you know, I suspect a class size of two to 400, in that range." *Id*. 15:7-17. Given the unclear scope of what Plaintiffs seek in terms of positions and geography, Wells Fargo cannot answer that question for the Court either. But due to the concentration of branches around Philadelphia and the number of hourly-paid positions in the branches, it could include hundreds more than Plaintiffs' wild guestimate.

### E. If A Collective Were Conditionally Certified, The Procedural Next Steps Would Be Extremely Burdensome.

Given the potential for notices to be sent to hundreds of potential opt-ins and the possibility of many individuals seeking to join the case as plaintiffs if a collective were

conditionally certified, the Court's questions at the hearing about what the next steps would be in the event of certification are critical ones. Plaintiffs' responses boiled down to three messages to the Court that glossed over the details and burdens of the next steps and substantially understated the repercussions of them for Wells Fargo, as well as for the Court in managing its docket.

1. Plaintiffs acknowledged that "discovery on 200 individuals, whether written or even deposition, would be extremely burdensome on everybody, including the Court," but then suggested as a workaround that Wells Fargo be deprived of its due process rights to defend against the claims of each opt-in plaintiff[18] by limiting it to "sample discovery" from "10 to 20 percent."[19] Tr. 18:17-19:5.

2. Plaintiffs admitted that, after the end of the discovery period, "It's entirely possible that, you know, the similar -- similarly situated analysis does, you know, is further proven in our favor or realistically could further be disproven," and suggested to this Court that all the unnecessary time and expense for Wells Fargo of discovery on a collective basis should not be considered because, in Plaintiffs' view, "that's the whole point of the bifurcated system that we have in the FLSA." *Id.* 19:6-14.

3. When asked about how a collective could be tried, Plaintiffs floundered in providing a substantive response and focused instead on the fact that Plaintiffs believe that this Court would not have to worry about that because the case would settle: "There could potentially be a jury trial. I mean it depends really what the defendant chooses to do at that point. We can move forward with trial. Often times settlement occurs. Settlement is probably the more common route at that point." *Id.* 19:15-21.

All three of Plaintiffs' responses suggest a complete disregard for the admonition given by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007), that, while provided in the context of a Rule 12(b)(6) ruling, seems particularly germane: "it is self-evident that the problem of discovery abuse cannot be solved by 'careful scrutiny of evidence at the

---

[18] By statute, each opt-in becomes a "party plaintiff" upon giving his written consent to join the lawsuit. 29 U.S.C. § 216(b).

[19] While Plaintiffs' counsel described the "sample" as being "representative," there is no way to conduct a representative sample in advance of taking discovery. Representativeness is a determination that this Court would have to make after all of the evidence about the "sample" opt-in plaintiffs had been collected and analyzed, most likely with reports and testimony from experts on both sides. *See, e.g.*, *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, at *1, *8 (W.D. Pa. Dec. 20, 2011) (decertifying collective of 824 opt-ins who worked in 142 different locations with 312 different supervisors because, with so many variations in plaintiffs' employment settings and local timekeeping practices, "it would be inherently unfair to both sides to base one Plaintiff's situation on another's potentially dramatically different situation" such that "[r]epresentative evidence simply will not work").

summary judgment stage,' much less 'lucid instructions to juries,' …; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings."

If a collective were certified, the next steps would be as follows:

1. Notice of the lawsuit and the opportunity to opt in would be sent to members of a conditionally-certified collective, provided that Plaintiffs can come up with an ascertainable one.[20]

2. The parties would spend months tracking and cataloging consent to join forms returned by the notice recipients and, most likely, engaging in motions practice regarding whether to honor defective and/or late-filed consent forms.

3. Discovery battles would ensue over the scope of permissible discovery, which, as defense counsel noted at the hearing, should include all opt-in plaintiffs because they would be parties plaintiff from whom Wells Fargo would be entitled to take discovery,[21] not absent class members as in a Rule 23 class.

4. Once the Court had ruled on the scope of permissible discovery, costly discovery would proceed for many months on the opt-in plaintiffs' claims and defenses to them.

5. A good number of opt-in plaintiffs would either (a) voluntarily dismiss their claims to avoid participating in the litigation process, or (b) be dismissed by the Court for

---

[20] At the hearing, Plaintiffs reiterated their requests for notice to be sent via email and posted in the workplaces and for a reminder postcard as well. Tr. 15:23-16:17. First, email is disfavored by courts for several reasons, including that it can easily be forwarded to improper recipients, sent "with commentary that could distort the notice approved by the Court," and improperly posted on the internet. *Vargas v. Gen. Nutrition Ctrs., Inc.*, No. 2:10-cv-867, 2012 WL 5336166, at *13 (W.D. Pa. Oct. 26, 2012) (quoting *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 09-CV-379, 2009 WL 1515175, at *6 (W.D. Pa. June 1, 2009)). Wells Fargo does not, in any event, require that branch team members provide personal email addresses or retain at the corporate level all email addresses that are voluntarily provided. Craw Decl. ¶ 4, Doc. 50-3 at 2-3. Second, there is no evidence that the only team members who would see a workplace posting (*i.e.*, current employees) would be unreachable by U.S. mail. *Vargas, supra.* Third, reminder postcards are "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit." *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010) (citation omitted).

[21] *See, e.g.*, *Coldiron v. Pizza Hut, Inc*., No. CV 03-05865-TJH (MCX), 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (permitting discovery as to all 306 opt-ins in an FLSA lawsuit because to deny it would be "an abuse of discretion" where the defendant "plainly intends to move to decertify the class" such that "individualized discovery … is both necessary and appropriate"); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 449-50 (S.D.N.Y. 1995) (permitting written discovery in an ADEA collective, which follows 29 U.S.C. § 216(b), from all 162 people and permitting depositions of 33); *Kaas v. Pratt & Whitney*, No. 89-8343-CIV-PAINE, 1991 WL 158943, at *5 (S.D. Fla. Mar. 18, 1991) (permitting written discovery and depositions of all 100 opt-ins in ADEA collective).

failure to prosecute their claims or because their claims are defective as untimely or not within the scope of the conditionally-certified collective.[22]

6. Summary judgment motions would likely be filed by one or both sides on a class-wide basis as to those opt-ins who remain, which would require the parties to provide voluminous evidentiary exhibits to cover each of the individual opt-in plaintiffs.

7. Plaintiffs would be obligated to submit a trial plan as to how their claims could properly be tried on a collective basis, which Wells Fargo would then have an opportunity to oppose. Courts may, and often do, reject plaintiffs' trial plans with the result usually being the decertification of the conditionally-certified collective.[23]

After all of the above steps are taken, there is a substantial chance, as Plaintiffs' counsel acknowledged at the hearing, that the conditionally certified collective would be decertified.[24] This would leave the parties to prepare for trial involving only the remaining named plaintiff(s) and the Court to decide how to manage the opt-ins.[25]

The inequity of putting Wells Fargo through the time and expense of these exhaustive steps in such an anemic case and the enormous burden this would impose on the Court warrant the Court to exercise its discretion to find that this is not an "appropriate case[]" for certification in the first place. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (describing the

---

[22] *See, e.g.*, *Rivet v. Office Depot, Inc.*, Civ. No. 2:12-02992 (WJM), 2015 WL 9308246, *1, 4-5 (D.N.J. Dec. 22, 2015) (dismissing 13 opt-ins for failure to prosecute their claims and participate in discovery); *Zanes v. Flagship Resort Dev., LLC,* No. 09-3736 (JEI/JS), 2012 WL 602778, *1, *3-5 (D.N.J. Jan. 30, 2012) (noting three opt-ins stipulated to dismissal rather than respond to discovery; dismissing four more for failure to participate in discovery), *adopted by* 2012 WL 602774 (D.N.J. Feb. 22, 2012).

[23] *See, e.g.*, *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 327 (E.D.N.Y. 2014) (decertifying collective after discovery because the plaintiffs had "not offered a manageable trial plan" and "[a]t this stage, Plaintiffs needed to provide more than bare assurances regarding trial manageability; it was incumbent on them to account for the rampant factual differences discussed *supra* and to demonstrate how this case could be tried fairly, based on common proof"); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, Civ. No. 09-85J, 2011 WL 6372873, at *5-9 (W.D. Pa. Dec. 20, 2011) (decertifying FLSA collective action because the plaintiffs had failed to explain how the many individualized inquiries could be addressed through collective adjudication).

[24] In 2017, 63% (15 of 24) decertification motions nationwide were granted.

[25] *See, e.g.*, *Bell v. Reading Hosp. & Med. Ctr.*, Civ. No. 13-cv-05927, 2016 WL 3902938, at *12-13 (E.D. Pa. July 19, 2016) (decertifying the collective, dismissing the 21 opt-in plaintiffs, and stating that the lawsuit would proceed on behalf of the named plaintiff after noting that "[w]hen plaintiffs allege that FLSA violations result 'from the *enforcement* decisions of individual supervisors … collective treatment is not appropriate'") (emphasis in original; citations omitted).

16

court's discretion to certify a collective and facilitate an opt-in notice process as being limited to "appropriate cases").

### III. CONCLUSION

For the reasons discussed above, at the hearing, and in Wells Fargo's Motion for Summary Judgment and Reply, Plate and his alleged collective of PBs should be dismissed from this lawsuit.  And for the reasons discussed above, at the hearing, and in Wells Fargo's Opposition to Plaintiffs' Motion for Conditional Certification, Miller's alleged collective of SM1s should be denied, and her FLSA claim should proceed only on an individual basis.

Date:  February 8, 2018                                           Respectfully submitted,

                                                                  SEYFARTH SHAW LLP

                                                                  *s/ Louisa J. Johnson*                          .
                                                                  [All counsel for Defendant on cover page]

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2018, a copy of the foregoing **Defendant's Supplemental Memorandum In Support Of Its Motion For Summary Judgment And In Opposition To Plaintiffs' Motion For Conditional Certification** was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

*s/ Louisa J. Johnson*
One of the Attorneys for Defendant