IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BEVERLY MILLER, et al,

Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

Defendant.

CIVIL ACTION
NO. 16-5597

## OPINION

Slomsky, J.                                                    March 29, 2018

## I.    INTRODUCTION

On behalf of themselves and others similarly situated, Plaintiffs Beverly Miller and Roger Plate filed this action against Defendant Wells Fargo Bank, N.A., their former employer. In the Complaint, Plaintiffs allege that Defendant failed to pay Plaintiffs overtime compensation for hours worked over 40 hours within a seven day work week, as required by the federal Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. Ann. §§ 333.101, et seq., and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. Ann. §§ 260.1, et seq.  (Doc. No. 1.)  Plaintiffs also claim that Defendant required them to work overtime and failed to compensate them for this "off-the-clock" work.  (Id. at 2.)

Before the Court is Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice.  (Doc. No. 46.)  They seek conditional certification of a collective action under the FLSA and authorization to issue opt-in notices and consent forms to all hourly-paid banking employees of Defendant who were employed over the past three years.  (Doc. Nos. 46, 46-1.)

On October 2, 2017, Defendant filed its Response in Opposition to Plaintiffs' Motion (Doc. No. 50), and on October 23, 2017, Plaintiffs filed a Reply (Doc. No. 60).  On December

21, 2017, a hearing was held on the Motion, and on February 8, 2018 the parties filed supplemental briefs (Doc. Nos. 80, 81, 82).[1]  The Motion is now ripe for a decision.  For reasons that follow, Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice will be granted in part.

## II.    BACKGROUND

Plaintiffs Beverly Miller ("Miller") and Roger Plate ("Plate") are former hourly-paid employees of Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in Philadelphia, Pennsylvania. (Doc. No. 47 at 2.)

From December 7, 2010 to approximately August 16, 2016, Miller was employed by Wells Fargo as a service manager.  (Doc. No. 47-2 ¶¶ 3, 4.)  She was an hourly-paid employee, earning about $19.85 per hour.  (Id. ¶ 12.)  As a service manager, Miller's duties included serving as a lead teller, providing training and coaching to other tellers to meet customer service and sales goals, coordinating tellers' schedules, and handling compliance and auditing matters.  (Id. ¶ 5.)  She was scheduled to work 40 hours per week, like the other tellers, service managers, and personal bankers employed by Wells Fargo.  (Id. ¶ 13.)  In addition, Miller claims:

> It was Wells Fargo's policy that hourly employees, similar to myself, were not to work overtime.  However hourly employees were often required to work over forty hours a week.  I would routinely and regularly need to stay past the end of my scheduled shift to ensure that tellers balanced out their drawers, or to attend to other tasks needed to close up for the day.  It was also common for me, and employees performing similar job tasks, to work through lunch.  I rarely took a lunch break.  I simply could not complete all of my job requirements if I took a lunch break.
>
> ***
>
> Despite it being commonplace for hourly employees to work in excess of forty hours a week, it was the practice of Wells Fargo to deny pre-approval requests for entry of overtime hours into its time keeping system.  Management knew working

---

[1]    On October 2, 2017, Defendant also filed a Motion for Summary Judgment (Doc. No. 51), which the Court will address in a separate Opinion.

more than forty hours a week was necessary to complete the assigned work, but would not approve the entry of overtime.  If you did not have approval from the [district manager], you were not to record overtime hours into the time tracking system.

(<u>Id.</u> ¶¶ 14,16.)

Miller alleges that her requests to enter overtime hours were denied by management and in the two instances she did report excess hours, she was reprimanded through the issuance of a "Memorandum of Understanding," which was placed in her personnel file.  (<u>Id.</u> ¶ 20.)  The Memorandum appears to be a written acknowledgement affirming Miller's awareness that overtime required approval of the district manager, the overtime she had entered was not given prior approval, and she would not report overtime without a district manager's approval in the future.  (<u>Id.</u> ¶ 21.)  She knows of other employees who also received similar Memorandums of Understanding after reporting they had worked over 40 hours during a given work week.  (<u>Id.</u> ¶ 20.)

After receipt of her second Memorandum, Miller informed Joe Mackie about it.  Mackie was the branch manager of the Wells Fargo location where she worked.  Mackie told her that he too had been reprimanded for approving overtime.  (<u>Id.</u> ¶ 22.)  Because she feared further reprimand or termination if she attempted to report overtime hours, Miller underreported her hours by approximately 7 hours each week to keep her recorded time at 40 hours per week.  (<u>Id.</u> ¶ 25.)  In her Declaration—a written statement made under penalty of perjury—submitted in support of the Motion, Miller also alleges:

> Based on personal knowledge and observation, I am aware that Wells Fargo employed numerous other hourly-paid retail banking employees who like me worked more than 40 hours per week without being paid all overtime compensation owed.

(<u>Id.</u> ¶ 28.)

Plaintiff Roger Plate also was an hourly-paid employee of Wells Fargo, earning approximately $21.63 per hour.  (Doc. No. 47-3 ¶¶ 1, 7.)  From 2010 until December 2012, Plate was employed as a private banker, assisting customers with financial products and services, such as personal loans.  (Id. ¶¶ 2-4.)  When Plate started working for Wells Fargo, he was assigned to the Collegeville, Pennsylvania branch.  (Id. ¶ 6.)  Sometime in 2012, he was relocated to the King of Prussia, Pennsylvania branch.  (Id.)  While working at these locations, Plate was frequently assigned to provide support at other Wells Fargo branches within the area.  (Id.)

Plate worked approximately 50-55 hours per week, sometimes including Saturdays.  (Id. ¶ 8.)  Like other personal bankers, Plate would arrive at least fifteen minutes prior to the branch's opening and stay until after closing.  (Id.)  According to Plate, personal bankers at the King of Prussia location would be required to stay after closing on Wednesday evenings to call prospective clients and to work on Saturdays to meet sales goals.  (Id.)  Plate also claims that "it was not possible to consistently meet sales goals and complete the other assigned tasks of the position without working in excess of 40 hours per workweek."  (Id. ¶ 10.)  Plate has personal knowledge that other personal bankers also worked overtime and that management was aware of this situation.  As he noted in his Declaration, also submitted in support of the Motion:

> The request to work additional hours was not presented as an optional request by the branch managers.  I could not meet management's expectations in performing my job duties if I did not work additional hours.  I was concerned about negative repercussions to my job if I did not work the additional hours.  Nevertheless, I was generally instructed by management to report only 40 hours of work per workweek.  On some occasions, when I attempted to report more hours than 40 in a given workweek, I was instructed by my direct supervisor to adjust the timesheet.  In other instances, if I would report more than 40 hours, the hours would be adjusted by the district manager after they had been reported.

(Id. ¶¶ 10-11.)

Plate claims that discrepancies existed between the hours he reported on his time sheet and the hours he was actually compensated for.  (Id. ¶ 18.)  He noticed that he was not paid for any overtime hours worked and raised this issue four times, but nothing happened.  (Id.)  In one instance, he reported a discrepancy to his branch manager, who showed Plate his purported time sheet.  (Id.)  Because Plate had a practice of regularly making his own personal record of the hours he worked, he noticed that the time sheet was inaccurate.  (Id.)

Like Miller, Plate claims that he then was fearful of reporting the excess hours and for this reason only reported 40 hours, as did other private bankers.  (Id. ¶ 12.)  He also notes that he knows of another private banker who was transferred to a different branch after complaining about the unpaid overtime.  (Id.)  Plate has identified two other private bankers who were not paid for their overtime work as well as another private banker who told Plate that "he would be interested in joining litigation with respect to unpaid overtime wages."  (Id.)

In sum, both Plaintiffs' allegations are twofold.  First, they claim that Wells Fargo required them to work overtime hours but prohibited them from reporting the excess hours.  Second, they allege that Wells Fargo failed to compensate them for any overtime hours worked, in violation of the FLSA and related Pennsylvania state wage laws.

## III.   STANDARD OF REVIEW

The Fair Labor Standards Act ("FLSA") requires employers to pay employees at one and one-half times the employees' hourly wage for hours worked in excess of forty hours per week.  29 U.S.C. §§ 206-07.  The statute permits a private right of action to be brought for covered employees if their employer violates the FLSA.  Knepper v. Rite Aid Corp., 675 F. 3d 249, 253 (3d Cir. 2012).  Specifically, Section 216(b) of the FLSA allows plaintiffs to bring a collective action against an employer on behalf of themselves and similarly situated employees for FLSA violations, including unpaid overtime.  29 U.S.C. § 216(b) ("No employee shall be a party

plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  In a collective action, the plaintiffs must affirmatively opt in to the lawsuit through written consent.  Bellaspica v. PJPA, LLC, 3 F. Supp. 3d 257, 259 (E.D. Pa. 2014) (citing Barrios v. Suburban Disposal, Inc., Civ. A. No. 12-03663, 2013 WL 6498086, at *2 (D.N.J. Dec. 11, 2013)).  District courts have discretion to authorize notice to putative opt-in plaintiffs "by conditionally certifying the matter as a collective action."  Id. (citing Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989)).

To show that conditional certification is appropriate, plaintiffs must make a "modest factual showing" that both they and the putative opt-in plaintiffs are similarly situated.  Galt v. Eagleville Hosp., Civ. A. No. 15-6851, 238 F. Supp. 3d 733, 735 (E.D. Pa. Mar. 2, 2017) (citations omitted).  There is a two-step process to determine whether opt-in plaintiffs are similarly situated under Section 216(b) of the FLSA.  Viscomi v. Diner, Civ. A. No. 13-4720, 2016 WL 1255713, at *3 (E.D. Pa. Mar. 31, 2016) (citations omitted).

First, a court conducts a "preliminary inquiry into whether the plaintiff[s] and the proposed group are similarly situated."  Id. (citing Parker v. NutriSystem, Inc., Civ. A. No. 08-cv-1508, 2008 WL 4399023, at *1 (E.D. Pa. Sept. 26, 2008)).  Plaintiffs have the burden to "produce some evidence, beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees."  Galt, 238 F. Supp. 3d at 735.  A modest factual showing may not be "founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents."  Viscomi, 2016 WL 1255713, at *3 (quoting Drummond v. Herr Foods, Inc., Civ. A. No. 13-cv-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015)).  In determining whether plaintiffs are similarly situated,

the Court does not evaluate the merits of the case.  Titchenell v. Apria Healthcare, Inc., Civ. A. No. 11-563, 2012 WL 3731341, at *3 (E.D. Pa. Aug. 29, 2012) (citations omitted).

Second, after discovery is complete, the Court scrutinizes each employee's claim through a factual analysis "to ensure that each proposed plaintiff is an appropriate member of the collective action."  Viscomi, 2016 WL 1255713, at *3 (citing Lugo v. Farmer's Pride, Inc., Civ. A. No. 07-cv-00749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008)).

## IV.   ANALYSIS

This case is at the first stage in which the Court must determine whether Plaintiffs Miller and Plate and the putative opt-in plaintiffs are similarly situated.  Plaintiffs are required therefore to make a modest factual showing evidencing some shared connection that they were "collectively the victims of a single decision, policy, or plan."  Id. at *4 (citing Lugo 2008 WL 638237, at *3).  This is a "fairly lenient standard."  Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 535 (3d Cir. 2012).

Wells Fargo argues that Miller and Plate are not themselves similarly situated because they do not share the same job title and they have not shown a common, unlawful employer policy or practice that constitutes a FLSA violation.  (Doc. No. 50 at 6.)  Wells Fargo also contends that Miller's and Plate's declarations contain inadmissible hearsay, and for this reason, Plaintiffs fail to properly identify other similarly situated persons who are interested in joining the action.  (Id.)

### A.  Plaintiffs Miller and Plate Are Similarly Situated

In support of their Motion, Plaintiffs have presented two declarations from Miller and Plate, in which they attest to their personal knowledge of Wells Fargo's alleged FLSA violations.[2]  (Doc. Nos. 47-2, 47-3.)  These declarations were given under penalty of perjury.[3] (Id.)

Such declarations are permissible to support the conditional certification of collective actions.  See Viscomi, 2016 WL 1255713, at *5 ("Courts routinely certify conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices." (citations omitted)).

In Viscomi v. Diner, plaintiffs submitted three affidavits incorporating the affiants' personal observation and experience with other employees, which defendants argued were unreliable and speculative.  Id.  Nonetheless, the court found that the evidence was sufficient to

---

[2]  Along with its Opposition to Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice, Wells Fargo has attached 21 declarations of other employees, including service managers and personal bankers, who attest to their job duties and generally to the fact that they have always been paid for overtime hours worked and have never been reprimanded or otherwise disciplined for working overtime.  (Doc. Nos. 50-1-50-7.)  But the fact that there are individuals who may not join in Plaintiffs' lawsuit does not defeat the claim that there are others who would opt in, given Plaintiffs' assertion that the "number of potential class members is estimated to be in excess of 1,000 individuals."  (Doc. No. 1 ¶ 5.)

Wells Fargo also submitted the declarations to undermine the merits of the case.  A court does not evaluate the merits of the case at this stage of the litigation.

[3]  During the December 21, 2017 hearing on Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice (Doc. No. 46) and Defendant's Motion for Summary Judgment (Doc. No. 51), defense counsel claimed that Plate's statements during a deposition were inconsistent with his declaration, arguing "that it's a sham declaration and should be disregarded by the Court, as is typical of post-deposition declarations that seek by counsel to draft something for the - - for the party."  (Hr'g Tr. at 30:18-21, Dec. 21, 2017.)  Defense counsel's arguments, however, would involve a ruling on the merits of the case.  Accordingly, the Court will consider Plaintiffs' declarations in evaluating whether they support a modest factual showing that they are similar to each other as well as to other potential opt-in plaintiffs.

support a modest factual showing that the alleged policies applied to the named plaintiffs and the putative opt-in plaintiffs.  Id.  It rejected defendants' characterization of the affidavits, finding that those arguments related to the merits of the claims instead of the commonality of the alleged FLSA violations.  Id.  Issues of credibility are improper at the first stage of the "similarly situated" evaluation but may be addressed at the decertification or summary judgment stage. Titchenell v. Apria Healthcare, Inc., Civ. A. No. 11-563, 2011 WL 5428559, at *6 (E.D. Pa. Nov. 8, 2011).  Similarly, in Sabol v. Apollo Group, Inc., the court accepted the testimony of the two named plaintiffs and written job descriptions as sufficient to grant their motion for conditional certification, "[g]iven the low evidentiary threshold required for the first stage of the certification inquiry."  Civ. A. No. 09-CV-3439, 2010 WL 1956591, at *5 (E.D. Pa. May 12, 2010).

Here, the declarations of Miller and Plate make a modest factual showing to warrant conditional certification in this case.  Despite the fact that Miller and Plate did not share the same job title while employed at Wells Fargo, they are both claiming that their former employer had policies or procedures in place to prevent them from reporting, and being compensated for, overtime hours worked.  Put simply, Miller and Plate collectively are alleging that they were victims of a common practice, which constituted violations of the FLSA.

### B.  Plaintiffs Miller and Plate Have Sufficiently Identified Potential Opt-In Plaintiffs Who Are Similarly Situated

Wells Fargo argues that Plaintiffs have not sufficiently demonstrated that there are other potential plaintiffs who would opt in to their lawsuit, particularly taking issue with hearsay statements being the basis for Plaintiffs' claim about the interest of other potential plaintiffs.[4]  In

---

[4]    As an example of the hearsay being challenged, Defendants point to the following statement of Miller: "Based on personal knowledge from observation and conversations with my co-workers at the branches I worked at, as well as [service managers] at other branches, I know

their declarations, both Miller and Plate attest to their personal knowledge that they are aware of other colleagues who experienced lack of compensation for overtime hours worked similar to their situation.

At this stage of conditional certification, it is sufficient that Miller and Plate have only identified other similarly situated individuals through their own personal observation and first-hand experience, as opposed, for example, to providing a compilation of affidavits from other similarly situated individuals.  As mentioned above, in <u>Viscomi</u>, the Court conditionally certified a collective action after it was satisfied with the plaintiffs' affidavits, which stated they had personal knowledge that their colleagues also faced similar employer practices.  2016 WL 1255713, at *5.  Given that this case is only at the initial stage of conditional certification, further discovery is yet to be obtained.  When discovery is finally complete and the identity of opt-in plaintiffs, if any, is known, the Court will revisit before final certification questions of credibility and reliability with respect to Plaintiffs' claims that the opt-ins are similarly situated.  At that time, Wells Fargo will have the opportunity to move for decertification of the collective action, and the Court may revoke conditional certification if the proposed collective class is not similarly situated to Miller and Plate.

### C.  Plaintiffs Will Meet and Confer with Wells Fargo

Given the conditional certification of the collective action, the Court will require Plaintiffs and Wells Fargo to meet and confer to finalize the language of the Notice and Consent Form, in addition to reaching an agreement with respect to employee information which Plaintiffs seek.

---

that those coworker employees were not paid all overtime compensation owed by Wells Fargo in a manner similar to me as described in this declaration."  (Doc. No. 47-2 ¶ 29.)

      **1.**   **Plaintiffs Will Amend the Language of the Envelope Containing the Notice and Consent Form, and the Parties Shall Meet and Confer to Finalize the Language of the Notice and Consent Forms**

Plaintiffs have submitted a Notice and Consent Form to be sent to potential opt-in plaintiffs.  (Doc. Nos. 47-4, 47-5.)  The four-page Notice has the name of the case and conspicuously states, "A federal court authorized this notice.  This is not a solicitation from a lawyer."  (Doc. No. 47-4 at 1.)  It describes the nature of the case as follows:

> Beverly Miller and Roger Plate (the "Plaintiffs") filed this lawsuit against Wells Fargo Bank, N.A. on behalf of themselves and all other past and current hourly-paid banking employees who worked for Wells Fargo.
>
> Plaintiffs argue that they and all hourly-paid banking employees are owed overtime pay under the Fair Labor Standards Act ("FLSA").  The Plaintiffs allege that they were not paid all overtime wages owed because Wells Fargo Bank, N.A. had the policy or practice of encouraging and/or permitting work to be done "off the clock," or while the employee in question was not clocked in.
>
> As a result, the Plaintiffs believe that Wells Fargo Bank, N.A. owes back overtime pay, liquidated damages (equal to back overtime pay), legal fees and costs for failing to pay all overtime pay owed.
>
> Wells Fargo Bank, N.A. denies Plaintiffs' allegations and contends that all overtime wages owed were properly paid to its employees.
>
> As mentioned above, the Court has not ruled whether Plaintiffs or Wells Fargo Bank, N.A. is correct.

(Id. at 2-3.)  The remainder of the Notice relates to how individuals can join the lawsuit and what will happen if they choose to do so.  The accompanying Consent Form is titled, "CONSENT TO BECOME PARTY PLAINTIFF" and does not have the name of the case.  (Doc. No. 47-5.) Plaintiffs propose to enclose these materials in an envelope sent to putative plaintiffs with a label stating, "Notice of Unpaid Overtime Lawsuit – Deadline to Join."  (Doc. No. 47 at 10.)

Wells Fargo alleges that in certain respects the language of the proposed Notice and Consent form is biased and misleading.  It argues that both documents should bear the case name and be limited to use in this lawsuit.  (Doc. No. 50 at 32.)  Wells Fargo also takes issue with the

envelope label statement, arguing that it is biased, prejudicial, and misleading.  (Id.)  In support of the envelope language, Plaintiffs submit a case from the United States District Court for the Eastern District of Missouri.  See Perrin v. Papa John's Int'l, Inc., Civ. A. No. 4:09-cv-01335-AGF, 2011 WL 4815246, at *6 (E.D. Mo. Oct. 11, 2011) (approving the phrase "Notice of Unpaid Overtime Lawsuit[,] Deadline to Join" as it fairly alerts to time-sensitive material).

As an initial matter, the Court has the responsibility to monitor the "preparation and distribution of the notice [to] ensure that it is timely, accurate, and informative."  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 172 (1989).  The Court agrees with Wells Fargo that the Consent Form should include the case name to avoid confusion when collecting the names of putative opt-in plaintiffs, if any exist.[5]  However, the phrasing, "Notice of Unpaid Overtime Lawsuit – Deadline to Join" does not appear to be either inaccurate nor prejudicial.  Plaintiffs are seeking to identify putative opt-in plaintiffs to join in their lawsuit, which alleges claims of unpaid overtime.  Failure to join within a certain period would preclude them from receiving any recovered funds.  Upon receipt of the envelope, the recipient will review the enclosures and learn about the nature of the collective action.  As mentioned previously, the Notice specifically states "the Court has not ruled whether Plaintiffs or Wells Fargo Bank, N.A. is correct [with respect to the overtime policy and compensation allegations]."  (Doc. No. 47-4 at 3.)  Nonetheless, the Court is unaware of other courts in this Circuit which have permitted this type of language on a Notice, and without established precedent, the Court must find a neutral balance with respect to the challenged language on the envelope.  See Hoffman-La Roche, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.").  Accordingly, the Court shall order that the envelope

---

[5]   The Notice already bears the case name, under the sub-section, "Why did I get this Notice?"  (Doc. No. 47-4 at 1.)

text simply state, "Notice of Fair Labor Standards Act Lawsuit – Time Sensitive Material Enclosed."  This language alerts the recipient to the sensitive and urgent nature of the contents and merely describes the type of lawsuit being brought, without suggesting whether overtime has been paid or not.

### 2. Plaintiffs and Wells Fargo Will Meet and Confer to Coordinate Production of Employee Information For the Purpose of Identifying Putative Opt-In Plaintiffs

The Court will also order that the parties schedule a conference to meet and confer on Plaintiffs' requested discovery regarding the identities of potential opt-in plaintiffs in this collective action.

Plaintiffs have requested that Wells Fargo produce the full names, last known addresses, last known residential and cell phone numbers, e-mail addresses, last four digits of their Social Security Number,[6] and dates of employment of all hourly-paid banking employees who currently work, or formerly worked, for Wells Fargo in the Greater Philadelphia area from three years prior to the date this Court certifies the collective action.  (Doc. No. 47 at 9.)  Wells Fargo claims that the privacy interests of the current and former employees outweigh Plaintiffs' requests for production.  (Doc. No. 50 at 33.)  It also argues that the geographic scope within which Plaintiffs seek to send the Notice and Consent Forms and the reference to "hourly-paid banking employees" are overbroad.  (Id. at 30-31.)  Moreover, Wells Fargo avers that Plaintiffs should not

---

[6]   Although Plaintiffs' Motion requests the last four digits of the Social Security numbers of former and current employees for the last three years (Doc. No. 47 at 9), they state in their Reply Brief (Doc. No. 60 at 10) that they are not currently requesting dates of birth and Social Security numbers.  Plaintiffs clarify that they will only request the last four digits of current and former employees' Social Security numbers if they fail to "successfully deliver notice to certain potential opt-in members" using their last known mailing addresses.  (Doc. No. 60 at 10.)

be allowed to extend their lawsuit to tellers and lead tellers, since neither Miller nor Plate held that job title.  (Id. at 31.)

Given that Plaintiffs are attempting to locate putative opt-in plaintiffs, their request for the contact information of current and former employees who may be similarly situated to them is reasonable.  See Stillman v. Staples, Inc., Civ. A. No. 07-849, 2008 WL 1843998, at *6 (D.N.J. Apr. 22, 2008) (holding that plaintiff's request for names, addresses, telephone numbers, and last four digits of the Social Security numbers of employees was reasonable).  However, the Court acknowledges the privacy concerns Wells Fargo raises, particularly with respect to the production of Social Security information and personal e-mail addresses, which Wells Fargo may not have.[7]

Accordingly, the Court "will order that the parties meet and confer regarding the contents and language of the notice, as well as how the notice will be distributed."  Rocha v. Gateway Funding Diversified Mortg. Servs., L.P., Civ. A. No. 15-482, 2016 WL 3077936, at *12 (E.D. Pa. Jun. 1, 2016), see also Galt v. Eagleville Hosp., 238 F. Supp. 3d 733, 738 (E.D. Pa. 2017) (requiring parties to meet and confer to clarify starting date for collective action period, form of notice, and for defendant to produce identities of potential opt-in plaintiffs).  Moreover, the parties should try to reach agreement on the geographic scope within which the Notices will be sent and to refine which employees will be included in the definition of "hourly-paid banking employees."  At this point, tellers and lead tellers will be included.  After meeting and conferring

---

[7]    The Court acknowledges that contact information may be difficult to obtain for individuals no longer employed by Wells Fargo.  However, in light of Plaintiffs' statement in its Reply Brief that it is not currently requesting Social Security information (Doc. No. 60 at 10; n.5), Wells Fargo does not have to turn over this information at this time.  But it probably possesses other basic contact information for the potential opt-in plaintiffs and should make this information available to Plaintiffs.

with Wells Fargo, Plaintiffs shall submit a revised form of the Notice and Consent Form to the Court.

**V.      CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion will be granted in part.  An appropriate Order follows.